IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JONATHAN O. HAFEN, in his capacity as Court-appointed Receiver,<br><br>Plaintiff,<br><br>v.<br><br>ROSARIA M. PERCELL, an individual; VANESSA PERCELL, an individual; and CHARLOTTE ANN PERCELL, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:19-cv-00899-TC-DBP<br><br>District Judge Tena Campbell<br>Chief Magistrate Judge Dustin B. Pead |

Defendant Vanessa Percell Maldonado has asked the court to certify nine legal questions to the Utah Supreme Court.  (ECF No. 19.)  For the following reasons, the court DENIES her motion to certify.

## BACKGROUND

The Rust Rare Coin (RRC) Silver Pool Ponzi scheme[1] collapsed in late 2018, when the Commodity Futures Trading Commission (CFTC) and the Utah Division of Securities sued Gaylen Rust, RRC, and other affiliates (collectively, "Receivership Defendants").  See CFTC v. Rust Rare Coin, Inc., No. 2:18-cv-892.  The court named Jonathan O. Hafen as the Receiver of the Receivership Defendants' assets (No. 2:18-cv-892, ECF No. 54), enabling him to file ancillary actions like this one to recover Receivership Defendant assets.  The Receiver filed this suit in November 2019, with a claim for fraudulent transfer under the Utah Uniform Voidable Transfers Act (UVTA),

---

[1] The court recently declined to make a blanket finding that RRC operated as a Ponzi scheme, (No. 2:18-cv-892, ECF No. 470), though it is undisputed that the Silver Pool was a Ponzi scheme. See, e.g., Jacob Scholl, Utahn Behind $200M Ponzi Scheme Sentenced to 19 years in Prison, KSL.com (Mar. 8, 2022, 4:20 PM), https://www.ksl.com/article/50363940/utahn-behind-200m-ponzi-scheme-sentenced-to-19-years-in-prison.

along with a claim for unjust enrichment.  (Compl., ECF No. 2.)  Now Ms. Maldonado wants the

court to ask the Utah Supreme Court for guidance on nine legal issues in this case.

## LEGAL STANDARD

The Utah Supreme Court has "original jurisdiction . . . to answer questions of state law

certified by a court of the United States."  Utah Const. art. VIII, § 3; see also Utah Code Ann.

§ 78A-3-102(1).  A federal court can employ the certification process "if the state of the law of

Utah applicable to a proceeding before the certifying court is uncertain."  Utah R. App. P. 41(a).

But certification should not be "routinely invoked" by federal courts whenever state law is unset-

tled.  Copier ex rel. Lindsey v. Smith & Wesson Corp., 138 F.3d 833, 838 (10th Cir. 1998).  After

all, federal courts often decide difficult questions of state law.  Id. (quoting Meredith v. City of

Winter Haven, 320 U.S. 228, 234 (1943)).  If under existing law a "reasonably clear and principled

course" is available, the court should think twice before granting certification.  Lawrence v. First

Fin. Inv. Fund V, LLC, 444 F. Supp. 3d 1313, 1319 (D. Utah 2020) (quoting Pino v. United States,

507 F.3d 1233, 1236 (10th Cir. 2007)); see also Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th

Cir. 1988) ("The federal court should consider state court decisions, decisions of other states, fed-

eral decisions, and the general weight and trend of authority.").

Yet certification is appropriate "when the case concerns a matter of vital public concern,

where the issue will likely recur in other cases, where resolution of the question to be certified is

outcome determinative of the case, and where the state supreme court has yet to have an oppor-

tunity to illuminate a clear path on the issue."  Nielson v. Harley-Davidson Motor Co. Grp., 426 F.

Supp. 3d 1197, 1205 (D. Utah 2019) (quoting Utah ex rel. Div. of Forestry, Fire & State Lands v.

United States, 335 F. Supp. 2d 1319, 1321 (D. Utah 2004)); see also Arizonans for Off. Eng. v.

Arizona, 520 U.S. 43, 77 (1997) (instructing that federal district courts may avail themselves of

state certification procedures when facing "[n]ovel, unsettled questions of state law"). Ultimately, certification should be reserved for those novel state-law issues about which a court would be "uncomfortable attempting to decide . . . without further guidance." Lawrence, 444 F. Supp. 3d at 1319 (quoting Pino, 507 F.3d at 1236).

To certify legal issues to the Utah Supreme Court, a federal district court must enter an "order of certification" that describes the issues to be answered, the significance of the legal questions to the federal litigation, the absence of "controlling" state law, all relevant facts and procedural history, and any other pertinent information. Utah R. App. P. 41(c). Although the Utah Supreme Court is not obligated to accept every certification order that it receives, Utah R. App. P. 41(e), it typically accepts federally certified questions. See Carol Funk, Understanding the Utah Supreme Court's Docket: A Practitioner's Guide, 35 Utah Bar J., no. 1, Jan.–Feb. 2022, at 17, 23. And the Utah Supreme Court can reformulate the certified questions so it can best answer them "in a context and manner useful to the resolution of [the] pending federal case." Scott v. Wingate Wilderness Therapy, LLC, 2021 UT 28, ¶ 18, 493 P.3d 592, 598 (quoting Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne, 2012 UT 66, ¶ 8, 289 P.3d 502, 505).

## DISCUSSION

Ms. Maldonado's motion lists nine questions to be certified:

1. Whether, under the UVTA, the plaintiff in a case involving a Ponzi scheme must offer evidence proving that the debtor–transferor made the transfer with actual intent to hinder, delay or defraud, or whether such intent is presumed as a matter of law.
2. Whether, under the UVTA, the plaintiff in a case involving a Ponzi scheme must offer evidence proving that the debtor–transferor was insolvent on the date of the transfer, or whether insolvency is presumed as a matter of law.
3. Whether "reasonably equivalent value" under the UVTA is limited to the amount of the principal portion of a debt or of the original investment and excludes satisfaction of the interest portion of a debt or a contractual obligation to pay a profit, notwithstanding Utah Code Ann. § 25-6-104(1), which includes in the definition of "value" the satisfaction of an antecedent debt, and makes no distinction between the principal portion

and the interest portion of the debt or between the amount of the original investment and a contractual profit.

4. Whether "value" under the UVTA means something different from what it means in fraudulent transfer cases that do not arise out of a Ponzi scheme.

5. If a "Ponzi scheme presumption" is supported by the UVTA, whether it is a conclusive or rebuttable presumption.

6. Whether a court-appointed receiver for the debtor–entity is a "creditor" of the debtor–entity under the UVTA with standing to bring claims against transferees of the debtor–entity.

7. Whether the extinguishment provisions in Utah Code Ann. § 25-6-305 are statutes of limitation or statutes of repose.

8. Whether the one-year statutory discovery period set forth in Utah Code Ann. § 25-6-305(1) begins to run in a case involving a Ponzi scheme when (i) an objectively reasonable creditor could have discovered the fraudulent transfer, or (ii) when the Ponzi schemer no longer controls the debtor–entity under the theory of adverse domination.

9. If Utah Code Ann. § 25-6-305(2) is considered a statute of limitations, as opposed to a statute of repose, whether the adverse domination theory works to toll the four-year limitations period.

(Maldonado Mot. to Certify at 2–3, ECF No. 19.)

Five of Ms. Maldonado's nine questions involve the contours of the "Ponzi-scheme presumption." A creditor can employ this presumption to shift its burden of proof on a fraudulent-transfer claim by merely establishing that a debtor operated a Ponzi scheme and the debtor's transfers were made "in furtherance of the scheme." See Finn v. All. Bank, 860 N.W.2d 638, 645 (Minn. 2015) (quoting Perkins v. Haines, 661 F.3d 623, 626 (11th Cir. 2011)). The Ponzi-scheme presumption was first articulated in a case from this district. Merrill v. Abbott (In re Indep. Clearing House Co.), 77 B.R. 843 (D. Utah 1987) (en banc). In re Independent Clearing House became the seminal case on the subject, having been cited by hundreds of cases.

The presumption can be separated into three parts. First, the existence of a Ponzi scheme "conclusively establishes that the debtor had fraudulent intent, which means that it treats all transfers from a Ponzi scheme as actually fraudulent." Finn, 860 N.W.2d at 645 (citing Donell v. Kowell, 533 F.3d 762, 777 (9th Cir. 2008)). Second, the existence of a Ponzi scheme "would prove as a matter of law that the debtor was 'insolvent' at the time of a disputed transfer, regardless of the

transfer's timing and the actual operations of the debtor."  Id. (citing Wiand v. Lee, 753 F.3d 1194, 1201 (11th Cir. 2014)).  Third, the existence of a Ponzi scheme means that "any transfer from [the] Ponzi scheme was not for reasonably equivalent value."  Id. (citing Donell, 533 F.3d at 777–78).

Ms. Maldonado's first question confronts the fraudulent-intent premise, her second question attacks the insolvency premise, and her third and fourth questions relate to the reasonably-equivalent-value premise.  Her fifth question, whether the Ponzi-scheme presumption is conclusive or rebuttable, depends on whether the presumption even exists under the UVTA.

As Ms. Maldonado notes, some courts have questioned or outright rejected the Ponzi-scheme presumption.  See, e.g., In re Bernard L. Madoff Inv. Sec. LLC, 12 F.4th 171, 201–02 (2d Cir. 2021) (Menashi, J., concurring), cert. denied sub nom. Citibank, N.A. v. Picard, 142 S. Ct. 1209 (2022).  The Minnesota Supreme Court discarded the entire presumption in Finn, 860 N.W.2d at 638.  On a certified question from the Fifth Circuit, the Texas Supreme Court answered Ms. Maldonado's fourth question, holding that there was no Ponzi-specific application of "reasonably equivalent value."  Janvey v. Golf Channel, Inc., 487 S.W.3d 560, 582 (Tex. 2016).  And the Oklahoma Supreme Court has rejected a similar presumption—that all Ponzi-derived profits are automatically subject to restitution under unjust-enrichment law.  Okla. Dep't of Sec. ex rel. Faught v. Blair, 2010 OK 16, ¶ 52, 231 P.3d 645, 669, as corrected (Apr. 6, 2010).

But the Colorado Supreme Court, citing Klein v. Cornelius, 786 F.3d 1310 (10th Cir. 2015), has assumed that the Ponzi-scheme presumption is legitimate.  Lewis v. Taylor, 2016 CO 48, ¶ 17, 375 P.3d 1205, 1208.  Klein answered the first, second, sixth, and eighth questions that Ms. Maldonado presents, holding that Ponzi-scheme operators have actual intent to defraud and that the schemes are insolvent, that a court-appointed receiver is a creditor with standing to sue, and that

adverse domination can toll the one-year discovery period under Utah Code Ann. § 25-6-305(1). 786 F.3d at 1320, 1316–17, 1322.

Tenth Circuit decisions interpreting Utah law, like <u>Klein</u>, are binding on this court until the Utah Supreme Court holds otherwise. <u>See Dullmaier v. Xanterra Parks & Resorts</u>, 883 F.3d 1278, 1284 (10th Cir. 2018) (quoting <u>Kokins v. Teleflex, Inc.</u>, 621 F.3d 1290, 1295 (10th Cir. 2010)). Though the court finds that the <u>Nielson</u> elements are likely met here, it will not certify Questions One, Two, Six, and Eight when <u>Klein</u> has already illuminated a clear path to follow.

As for the other six questions, they are limited in scope, and some are derivative of the already-answered questions, so they are therefore unnecessary to certify. Questions Three and Four are unnecessary to certify because the Utah Supreme Court and the Tenth Circuit have already defined "reasonably equivalent value." To receive reasonably equivalent value for a transfer, the transfer must "replace[] the asset with one of equivalent value, thus avoiding any harm to creditors." <u>Rupp v. Moffo</u>, 2015 UT 71, ¶ 17, 358 P.3d 1060, 1064. Or as the <u>Klein</u> court put it, "[t]he primary consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved." <u>Klein</u>, 786 F.3d at 1321 (quoting <u>S.E.C. v. Res. Dev. Int'l, LLC</u>, 487 F.3d 295, 301 (5th Cir. 2007)). These definitions are functionally identical, providing the court with all the guidance it needs to comfortably proceed. <u>See Lawrence</u>, 444 F. Supp. 3d at 1319.

For Question Five, the Ponzi presumption can certainly be "rebutted" by evidence that individual transactions fell outside of the scheme, but there is otherwise no rebuttal that can overcome the presumption. The Tenth Circuit basically answered Question Seven when it described § 25-6-305 as a statute of limitations. <u>Klein</u>, 786 F.3d at 1321–22. And though <u>Klein</u> only addressed adverse domination in § 25-6-305(1), the court's analysis maps neatly onto Subsection (2),

which uses identical language applied to a slightly different voidable-transaction theory.  This resolves Question Nine.

   If this case proceeds to final judgment, Ms. Maldonado is free to ask the Tenth Circuit to certify these questions.  For now, the court has all the answers it needs to decide this case.  The motion to certify (ECF No. 19) is DENIED, and the stipulated motion for joint hearings (ECF No. 40) is DENIED as moot.

   DATED this 17th day of August, 2022.

                                        BY THE COURT:

                                        TENA CAMPBELL
                                        United States District Judge